Peck, J.
delivered the opinion of the court.
This was an action brought by Phill, a man of col- or, against the plaintiffs in error in the circuit court of Sumner county, for tresspass and imprisonment, to try his right to freedom. The issue to the country is on this point. The principal evidence from the record appears to be, that the elder Hadley had been the owner of the plaintiff below, with others; that he was desirous to free his slaves, had applied to the county court of Sumner, *464 an(] pad failed in bis application; he then petitioned the legislature, where he also failed. Subsequently, and not long before his death, he conveyed the 'negroes to Lati-more, Phill inclusive, with an express understanding that he was to take them to Illinois and liberate them from the bonds of slavery. Latimore took the negroes to the State of Illinois, where he remained a few days, and while there, executed to them a deed of emancipation, which deed recites upon its face, that he, the said Lati-more, had that day given bond agreeably to the laws of the State of Illinois in the requisite penalty, that said persons so liberated, should not become a county charge. The reading of this deed was objected to, but Latimore appeared in open court and acknowledged that he had executed the same, and proved by his own oath the taking of the negroes to Illinois with the intent of freeing them, that when they left Tennessee, it was the intention of all concerned that the negroes should become citizens of Illinois, and there to remain. But Phill and others of the negroes expressing a desire to return with him, Latimore, to Tennessee, they took counsel if the said negroes could return without endangering their liberty. They were advised, that being free they might go where they pleased; thereupon they returned, waited upon their aged master until his death, and were then seized as slaves by the plaintiffs in error. The elder Hadley, when he made the bill of sale to Latimore, was aged upwards of seventy years, was changeable in his affections, had expressed great hostility to his family, but both before and after expressing such hostility, had expressed .himself in favor of emancipation. He disposed of his property by gifts to prevent it going to members of his family, but shortly before his death he became reconciled to them.
The court charged, that the plaintiffs were not bound to show what the statutes of Illinois were upon the subject of emancipation; by common law, slaves might be manumitted by deed alone; and if said Latimore went *465 with plaintiff to Illinois, and their original intention was not to return to Tennessee, and the deed was executed and immediately afterwards came to the conclusion to return to Tennessee, yet it would not be an evasion of the laws of Tennessee, but the emancipation would be effectual.
The jury rendered a verdict in favor of the defendants in error.
The first point made in argument is that which arises upon the demurrer filed to the plea. It is said there was \error in permitting it to be withdrawn, and a replication to be filed. We think otherwise. It has been the constant course of the courts to allow amendments to reach the justice of the case; our acts of Assembly require that it should be permitted, and when subsequently, a trial has been had upon the merits, the court here will not determine the cause, perhaps against the justice of it, upon technicality, and especially in a case like the present, where the matter to be settled is of more consequence to one of the parties than a mere right of property.
The discretion exercised in allowing the amendment was properly exercised. There appears to be some irregularity in coming to an issne after replication filed. There is a demurrer, though not in form; it appears to have been entered in brief to the replication; but as there is an issue and a trial upon it, the demurrer will be considered as waived by the parties.
The second point and which is the main one in the cause, assumes that the trip to Illinois, the giving the deed there to the negroes, was mere form, done to evade the operation of the laws and policy of Tennessee, and therefore void.
We are all of opinion that this question, if the law be as contended for by plaintiff in error, was wellleftto the jury in the charge of the court, that if the intention was bon a fide to free the slaves, and Latimore having the title, conveyed them into a country, where by the constitution and *466 frame of government involuntary slavery is not tolerated, and there complied with the laws, which made them free, emancipation followed as a consequence, and once free in Illinois, the return to Tennessee does not replace them in the condition of slaves. The laws of Illinois are produced to show that strict compliance has not been had in that State so as to secure freedom. Some of those laws were territorial regulations, which it must be seen,, became inoperative when the constitution of Illinois was framed; and in this we are confirmed by the revised code of 1829, which does not bring those laws forward as being in force and use.
We do not find any thing in the laws of Illinois conflicting with the right claimed by the plaintiff below, as stated by the court; the proof of invalidity of the emancipation must come from those who in this case are charged as trespassers, prima facie. The act of emancipation, so far as facts are given us to judge of, is consistent with the laws of the community where the act took place. There is, therefore, no conflict between the facts proved and the finding of the jury. If it be true as contended, that the original design was to evade the laws of Tennessee, and that the return of the plaintiff into the .State is inconsistent with our policy, still that will not replace them in the condition of slaves. To know what the policy of a country is, we must look to the laws. Tennessee, in expressing her policy, has chalked out the mode of emancipation to be pursued here. If this State designed to make such acts as this record presents nullities, then express enactments should be shown. The argument is, that if such emancipation in Illinois becomes effectual and the negro returns, the county in Tennessee where he may settle, has no indemnity, should such emancipated person become a county charge. This may be true, but it ig a casus omissus, and the evil, if it be one, is not remedied by any enactment. We cannot for the sake of preserving what is termed our policy from violation, make *467 the law; it is enough for us to administer such as are made to our hands.
This case having been argued with much zeal and ability, it has been deemed proper to state the case at large, and repeat the law touching amendments, although the rules of decision have long since settled the practice. Many of the facts in the case have nothing to do with the matter really in issue, but as they have been gravely brought forward, it was thought best not to drop them in the opinion.
Judgment affirmed.